In The

# United States Court of Appeals
## For The Sixth Circuit

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

**v.**

**MAHLON T. PRATER, JR.,**

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Tennessee
Case No. 3:19-cr-151

## APPELLANT MAHLON PRATER'S BRIEF ON APPEAL

Stephen J. van Stempvoort
MILLER JOHNSON
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1700
vanstempvoorts@millerjohnson.com
*Counsel for Appellant*

# Table of Contents

INDEX OF AUTHORITIES..........................................................................................iv

CORPORATE DISCLOSURE ...................................................................................1

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................................2

STATEMENT OF JURISDICTION..........................................................................3

STATEMENT OF ISSUES .......................................................................................4

INTRODUCTION .....................................................................................................5

STATEMENT OF THE CASE...................................................................................7

    A.    The government obtains evidence that Prater distributed crack cocaine in connection with his membership in the Vice Lords DTO. ...................................................................................................7

    B.    As a result of its investigation into the Vice Lords, the Government obtains a multi-defendant indictment and separately indicts Prater. .....................10

    C.    Prater pleads guilty in Case No. 152.....................................................11

    D.    Despite Prater's guilty plea to a conspiracy charge in Case No. 152, Prater is charged with conspiracy in a superseding indictment in Case No. 151...........................................................................12

    E.    The district court denies Prater's motion to dismiss the superseding indictment, and Prater proceeds to trial. ..............................................13

    F.    Trial witnesses testify that the Vice Lords conspired to sell numerous types of drugs and that Prater was rarely seen with a gun...........................................................................................................15

    G.    Throughout the litigation, the Government expands and contracts the scope of the Vice Lords DTO as necessary to suit its arguments.................................................................................................17

    H.    The jury acquits Prater of Count Seven but convicts him of the remaining charges. ................................................................................22

    I.    The PSR combines Case No. 151 and Case No. 152 in order to calculate Prater's sentence. ...................................................................23

SUMMARY OF THE ARGUMENT ........................................................................24

ARGUMENT ..................................................................................................................25

I.      Prater's double jeopardy rights were violated, because he had already
        pleaded guilty in Case No. 152 to the same drug trafficking conspiracy
        with which he was charged in Case No. 151. ...............................................25

        A.      Standard of review. ...........................................................................25

        B.      Double jeopardy prevents the Government from carving a single
                conspiracy into multiple conspiracies and charging them
                separately. .........................................................................................25

        C.      The district court failed to recognize that the burden of proof is on
                the prosecution. .................................................................................27

        D.      Under the *Sinito* factors, the Government failed to prove that there
                was more than one conspiracy. ..........................................................30

                1.      Time. .......................................................................................32

                2.      Persons Acting as Co-Conspirators .........................................34

                3.      Offenses charged. ...................................................................37

                4.      The overt acts charged/scope of activity..................................39

                5.      Location. ..................................................................................41

        E.      The Government failed to prove that Prater was involved in
                multiple conspiracies. ........................................................................43

II.     There was insufficient evidence to convict Prater of Count Two, which
        charged him with aiding and abetting the possession of a firearm in
        furtherance of a drug trafficking crime...........................................................47

        A.      Standard of review. ...........................................................................47

        B.      There was insufficient evidence to prove that Prater had advance
                knowledge that his codefendants would possess any particular
                firearm................................................................................................47

III.    The district court erred at sentencing by failing to apply a reduction for
        acceptance of responsibility and by applying an enhancement for
        obstruction of justice.......................................................................................52

Table of Contents
(continued)

Page

A.      Standard of review. ............................................................................ 52

B.      A reduction should have been granted under USSG § 3E1.1
because Prater pleaded guilty in Case No. 152. .................................... 52

C.      The district court erred in believing that a reduction under § 3E1.1
was barred by an obstruction enhancement under § 3C1.1. ................... 54

CONCLUSION ........................................................................................................ 55

CERTIFICATE OF COMPLIANCE ........................................................................ 56

CERTIFICATE OF SERVICE ................................................................................. 57

ADDENDUM ........................................................................................................... 58

# Index of Authorities

Page

**Cases**

*Blockburger v. United States*,
284 U.S. 299 (1932)..................................................................26

*Braverman v. United States*,
317 U.S. 49 (1942)................................................................26, 33

*Corral v. United States*,
562 F. App'x 399 (6th Cir. 2014) .................................27, 38, 40, 41, 43

*In re Grand Jury Proc.*,
797 F.2d 1377 (6th Cir. 1986) .............................................25, 27, 28, 37

*Jackson v. Virginia*,
443 U.S. 307 (1979)..................................................................47

*Jones v. Harry*,
405 F. App'x 23 (6th Cir. 2010) .........................................................25

*Jones v. Thomas*,
491 U.S. 376 (1989)..................................................................25

*Maxwell v. United States*,
617 F. App'x 470 (6th Cir. 2015) .......................................................41

*Rosemond v. United States*,
572 U.S. 65 (2014)..............................................................48, 50, 51

*United States v. Coop*,
807 F. App'x 442 (6th Cir. 2020) .......................................................51

*United States v. Deitz*,
577 F.3d 672 (6th Cir. 2009) ...........................................................35

*United States v. Graham*,
275 F.3d 490 (6th Cir. 2001) ...........................................................49

*United States v. Grant*,
256 F.3d 1146 (11th Cir. 2001) ..........................................................3

*United States v. Hall*,
20 F.4th 1085 (6th Cir. 2022) ..........................................................45

*United States v. Hollis*,
823 F.3d 1045 (6th Cir. 2016) ..........................................................52

*United States v. Iossifov*,
45 F.4th 899 (6th Cir. 2022) ...................................................................52

*United States v. Jabara*,
644 F.2d 574 (6th Cir. 1981) ..................................................................28

*United States v. Jones*,
858 F.3d 221 (4th Cir. 2017) .....................................25, 28, 30, 31, 32, 33, 35, 40, 44, 45, 46

*United States v. Kelley*,
849 F.2d 999 (6th Cir. 1988) ..................................................................39

*United States v. Kistner*,
590 F. App'x 514 (6th Cir. 2014) ...........................................................32

*United States v. Lawrence*,
735 F.3d 385 (6th Cir. 2013) ..................................................................25

*United States v. Levy*,
803 F.2d 1390 (5th Cir. 1986) ................................................................34

*United States v. Maddox*,
944 F.2d 1223 (6th Cir. 1991) ................................................................39

*United States v. Maslin*,
356 F.3d 191 (2d Cir. 2004).....................................................................42

*United States v. Meda*,
812 F.3d 502 (6th Cir. 2015) ...........................................................34, 37

*United States v. Parks*,
581 F. App'x 575 (7th Cir. 2014) .............................................................3

*United States v. Rabhan*,
628 F.3d 200 (5th Cir. 2010) ...................................................32, 43, 44

*United States v. Ragins*,
840 F.2d 1184 (4th Cir. 1988) ..........................................................29, 44

*United States v. Reyes-Correa*,
971 F.3d 6 (1st Cir. 2020)........................................................................31

*United States v. Scott*,
760 F. App'x 151 (4th Cir. 2019) ....................................30, 33, 38, 40

*United States v. Shepard,*
    89 F. Supp. 2d 884 (W.D. Mich. 1999) ...............................................34, 38, 41, 44

*United States v. Sinito,*
    723 F.2d 1250 (6th Cir. 1983) ..............................6, 14, 24, 26, 27, 30, 31, 38, 39, 41

*United States v. Vichitvongsa,*
    819 F.3d 260 (6th Cir. 2016) ..............................................................................49

*United States v. Wheeler,*
    535 F.3d 446 (6th Cir. 2008) ...........................................................27, 34, 35, 38

*United States v. Williams,*
    158 F. App'x 651 (6th Cir. 2005) .........................................................................20

*United States v. Wilson,*
    168 F.3d 916 (6th Cir. 1999) ...............................................................................22

**Statutes**

18 U.S.C. § 924(c)(1)(A) ..................................................................................7, 47, 49

21 U.S.C. § 841(a)(1) .............................................................................................10, 37

21 U.S.C. § 846 ..............................................................................................10, 37, 18

28 U.S.C. § 1291 ........................................................................................................3

USSG § 3C1.1 ...............................................................................................52, 54, 55

USSG § 3E1.1 .................................................4, 7, 12, 23, 24, 25, 52, 53, 54, 55

**Other Authorities**

6th Cir. R. 26.1.............................................................................................................1

## CORPORATE DISCLOSURE

Pursuant to 6th Cir. R. 26.1, Appellant is not a subsidiary or affiliate of a publicly owned corporation, nor is there a publicly owned company that has a financial interest in the outcome of this appeal.

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Although several codefendants have filed appeals in these consolidated cases, Mahlon Prater's appeal is unique. Unlike his codefendants, Prater was indicted on a drug-distribution conspiracy charge in this case only after he had already pleaded guilty to participating in the same drug-distribution conspiracy in a different case. All of the relevant factors indicate that the two prosecutions stem from the same conspiracy. The conspiracy charge to which Prater pleaded guilty in the prior case is a smaller subset of the broad conspiracy charge of which Prater and his codefendants were convicted at trial in this case.

In short, Prater has been prosecuted twice for participating in only one conspiracy. That is a violation of the Double Jeopardy Clause.

This issue is not present in any of the appeals asserted by any of Prater's codefendants. Due to the significance of the issues, the Court should hold oral argument in this case, particularly with respect to the issues pertaining to Prater.

## STATEMENT OF JURISDICTION

The district court entered its judgment on July 12, 2022. (Judgment, RE 890, PageID.12977). Appellant Prater timely filed a notice of appeal on July 13, 2022. (Notice of Appeal, RE 892, PageID.12989). This Court has jurisdiction over the appeal from both Case No. 3:19-cr-151 and Case No. 3:19-cr-152 under 28 U.S.C. § 1291. *See United States v. Grant*, 256 F.3d 1146, 1150 (11th Cir. 2001) (appeal from consolidated criminal cases); *United States v. Parks*, 581 F. App'x 575, 576 n.1 (7th Cir. 2014) (same).

# STATEMENT OF ISSUES

I.   Whether the district court erred in denying Prater's motion to dismiss the conspiracy charge in Count One on double-jeopardy grounds, where the district court failed to acknowledge that the Government had the burden of proving that the conspiracy in Case No. 152 was not a subset of the conspiracy that was charged in Case No. 151 and where all of the relevant factors strongly indicated that it was.

II.  Whether there was insufficient evidence to convict Prater of aiding and abetting the possession of a firearm in furtherance of the conspiracy charged in Count One, where there was no proof that Prater had advance knowledge that his codefendants would possess any particular firearm.

III. Whether the district court erred when it denied Prater a sentencing reduction for acceptance of responsibility under USSG § 3E1.1, when Prater pleaded guilty in Case No. 152 even though he went to trial in Case No. 151.

# **INTRODUCTION**

The Double Jeopardy Clause prohibits the Government from carving up a single conspiracy in order to manufacture distinct offenses out of what is in reality a single crime. This problem often arises when the Government charges a defendant with participating in a relatively small conspiracy that, upon closer review, turns out to be comprised of a subset of overt acts that are carved out of a larger conspiracy with which the defendant is also charged. When that occurs, the defendant is being punished twice for engaging in only a single conspiracy. And when the defendant points out that this is likely happening, the burden is on the Government to prove that the two charged conspiracies are entirely distinct from each other.

This case presents that problem. After investigating the Knoxville, Tennessee chapter of the Vice Lords street gang for distribution of multiple drugs, including methamphetamine, marijuana, and crack cocaine, the Government obtained a methamphetamine conspiracy indictment against multiple Vice Lords in Case No. 151. On the same day that it obtained the methamphetamine conspiracy indictment, the Government carved off a crack cocaine conspiracy charge and indicted only one of the Vice Lords, Mahlon Prater (and unnamed coconspirators), for that conduct in Case No. 152. Prater pleaded guilty to the crack cocaine conspiracy charge in Case No. 152, but before he was sentenced, the Government

filed a superseding indictment in Case No. 151. The superseding indictment added several more drugs to the conspiracy charge and added Prater as a defendant in Case No. 151, as well. But by then, it was too late: Prater had already been indicted and had pleaded guilty to the conspiracy charge in Case No. 152, which was a subset of the larger conspiracy that was charged in Case No. 151.

The trial court denied Prater's motion to dismiss the indictment in Case No. 151 (which is the case underlying this appeal) on double-jeopardy grounds. But the trial court failed to recognize that the burden of proof was on the Government—not on Prater—to demonstrate that the two cases involved two entirely separate conspiracies instead of only one. And the factors that are relevant to this determination under *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983), strongly indicate that the smaller charged conspiracy was a subset of the larger conspiracy: the duration of the larger conspiracy completely encompasses the smaller charged conspiracy; both charged conspiracies appear to have involved the Knoxville Vice Lords, particularly because several members were known crack cocaine distributors; both indictments charged the same offense; both indictments charged overt acts in furtherance of a single goal—namely, selling controlled substances; and the geographical "base" of operations of both alleged conspiracies was the same: Knoxville, Tennessee. At minimum, the Government failed to prove

that—despite all of these similarities—Case No. 152 was not simply a subset of the larger conspiracy that was charged in Case No. 151.

The district court erred in declining to dismiss the conspiracy charge against Prater, even though it is barred by double jeopardy. Moreover, Prater's conviction on Count Two—which asserted a charge under 18 U.S.C. § 924(c)(1)(A)—must also fail, both because it is predicated on Count One and because there was insufficient evidence to support the conviction. And finally, the district court incorrectly believed that it was barred at sentencing from applying a reduction under USSG § 3E1.1 for acceptance of responsibility, even though Prater pleaded guilty in Case No. 152. Prater's convictions and sentence should be reversed.

## STATEMENT OF THE CASE

**A.  The government obtains evidence that Prater distributed crack cocaine in connection with his membership in the Vice Lords DTO.**

In 2018, federal agents began investigating a drug trafficking conspiracy that was being operated by the Vice Lords street gang in the Knoxville, Tennessee area. (Response, RE 231, PageID.1697; Affidavit, RE 231-1, PageID.1791-1795). On March 26, 2019, federal agents obtained a wiretap for Prater's cell phone ("TT1"). (Response, RE 231, PageID.1697). The agents subsequently obtained wiretaps for two other telephones used by Vice Lords members, as well. (Response, RE 231, PageID.1697).

As the Government's later filings made clear, the Government investigated Prater as part of its investigation into the overall Vice Lords conspiracy. In December 2018 and January 2019, the Government used a confidential informant to make several controlled purchases of crack cocaine from Prater. (Response, RE 231, PageID.1704-1705; Affidavit, RE 231-1, PageID.1795-1800). When federal agents applied for the wiretap for TT1, the supporting affidavit explained that Prater's distribution of crack cocaine was part of a drug trafficking organization ("DTO") that was run by members of the Vice Lords. For example, the affidavit indicated that the controlled buys of crack cocaine had captured "a narrow slice of the DTO's operations." (Affidavit, RE 231-1, PageID.1802). The affidavit also specified that Prater had been using a prior phone number "to conduct crack cocaine transactions and business associated with the DTO" and that he subsequently switched to TT1 and continued "to conduct crack cocaine transactions and business associated with the DTO." (Affidavit, RE 231-1, PageID.1802).

The affidavit supporting the wiretap application for TT1 specified that the "target subjects" included Prater and his fellow Vice Lords, including individuals who would later be named as codefendants in the conspiracy: Alim Turner, Ushery Stewart, Kedaris Gilmore, and Joshua Carmley. (Affidavit, RE 231-1, PageID.1786-1787). The affidavit identified the "target offenses" as including distribution of "cocaine, crack cocaine, heroin, and methamphetamine." (Affidavit, RE 231-1,

PageID.1787). The affidavit also indicated that there was a single drug trafficking organization ("DTO") that the agents were investigating. (Affidavit, RE 231-1, PageID.1789, 1791). The affidavit specified that the wiretap on Prater's phone was necessary for "identification of all significant contributors to the DTO." (Affidavit, RE 231-1, PageID.1801).

Subsequent wiretap applications likewise indicate that Prater was a member of a single DTO, which distributed crack cocaine in addition to other drugs. One wiretap affidavit explains that the confidential informant provided information about the DTO and made "controlled buys of crack cocaine from a single member of the DTO." (Affidavit, RE 231-2, PageID.1844). Another affidavit explains that, in addition to Prater, several other Vice Lords were known distributors of "crack cocaine," including Kedaris Gilmore, Kevin Roberts, Jeremiah Moore, and Jaylen Cody. (Affidavit, RE 231-3, PageID.1863, 1864).

The wiretap affidavits also state that Prater was temporarily kicked out of the Vice Lords "shortly after interception over [TT1] began," which was on March 26, 2019. (Affidavit, RE 231-3, PageID.1865). According to the Government, in other words, when the controlled purchases of crack cocaine were made in December 2018 and January 2019, Prater was a full member of the Vice Lords DTO. He was temporarily kicked out of the organization only after those sales took place, in late March or early April 2019. Wiretaps post-dating April 2019 indicated that

Prater was "back working with members of the gang to distribute narcotics." (Affidavit, RE 231-3, PageID.1865).

## B. As a result of its investigation into the Vice Lords, the Government obtains a multi-defendant indictment and separately indicts Prater.

On September 4, 2019, the Government obtained an indictment of several Vice Lords members, alleging a conspiracy to distribute methamphetamine. (Indictment, RE 3, PageID.4-5). This case is referred to as Case No. 151, which is the case underlying this appeal.

Prater was not included in the initial indictment in Case No. 151. Instead, on the same day that the grand jury returned the initial indictment in Case No. 151—September 4, 2019—the grand jury returned a separate, one-count indictment against Prater. This is referred to as Case No. 152.

The indictment in Case No. 152 charged Prater with a single count of conspiracy with "persons known and unknown to the Grand Jury" to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1). None of Prater's alleged coconspirators were named in the indictment. The indictment alleged that the conspiracy began "at least as early as in or around December of 2018, continuing through in and around April of 2019." (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1). The indictment further alleged that the conspiracy was located "in the Eastern District of Tennessee and elsewhere." (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1).

According to the Government's investigation, Prater was not kicked out of the Vice Lords (temporarily) until shortly after March 26, 2019. Before that, Prater was working with the Vice Lords—including individuals like Kedaris Gilmore, who was a known distributor of crack cocaine—to distribute narcotics, including during the controlled purchases of crack cocaine in December 2018 and January 2019. Thus, the indictment in Case No. 152 was based upon conduct that, according to the Government's investigation, occurred while Prater was a member of the Vice Lords and the larger DTO.

### C.    Prater pleads guilty in Case No. 152.

The indictment in Case No. 152 was filed on September 4, 2019. (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1). A month later, in October 2019, Prater pleaded guilty to the charge in Case No. 152 pursuant to a written plea agreement. (Case No. 3:19-cr-152, Plea Agreement, RE 15, PageID.22). The factual basis for the plea agreement provided that "[w]ithin the charged conspiracy dates, the defendant worked with others to sell crack cocaine." (Case No. 3:19-cr-152, Plea Agreement, RE 15, PageID.23). Specifically, on several occasions, Prater sold crack cocaine to a confidential informant. (Case No. 3:19-cr-152, Plea Agreement, RE 15, PageID.23).

The plea agreement also provided that, due to Prater's agreement to plead guilty, the Government would not oppose a reduction at sentencing for

acceptance of responsibility under USSG § 3E1.1. (Case No. 3:19-cr-152, Plea Agreement, RE 15, PageID.25).

**D. Despite Prater's guilty plea to a conspiracy charge in Case No. 152, Prater is charged with conspiracy in a superseding indictment in Case No. 151.**

Before Prater was sentenced in Case No. 152, the Government filed a superseding indictment in Case No. 151. The superseding indictment upgraded the conspiracy count to allege a multi-drug conspiracy and included Prater as a codefendant, along with several other additional members of the Vice Lords. (Superseding Indictment, RE 78, PageID.149). The superseding indictment alleged that the conspiracy lasted from July 15, 2018 through November 22, 2019 "in the Eastern District of Tennessee, and elsewhere." (Superseding Indictment, RE 78, PageID.149).

Eventually, the Government obtained a second superseding indictment, which charged Prater with the following crimes:

> **Count One**: Conspiracy to distribute controlled substances, including methamphetamine, fentanyl, oxycodone, alprazolam, marijuana, buprenorphine, and heroin, in violation of 21 U.S.C. § 846. This conspiracy was alleged to have occurred "in the Eastern District of Tennessee and elsewhere" between "on or about July 15, 2018 through on or about November 22, 2019" and to have involved "other persons known and unknown to the Grand Jury." (Second Superseding Indictment, RE 243, PageID.1944-1945).

**Count Two**: Aiding and abetting possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). This charge was alleged to have been committed during the same time that the conspiracy charge in Count One was committed: between July 15, 2018 and September 6, 2019. (Second Superseding Indictment, RE 243, PageID.1945).

**Count Four**: Attempted possession with intent to distribute 50 grams or more of methamphetamine on or about July 15, 2019, in violation of 21 U.S.C. §§ 841(a)(1) and 846. (Second Superseding Indictment, RE 243, PageID.1947-1948).

**Count Six**: Distribution of 50 grams or more of methamphetamine "on or around the end of July 2019," in violation of 21 U.S.C. § 841(a)(1). (Second Superseding Indictment, RE 243, PageID.1948-1949).

**Count Seven**: Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A). This charge was alleged to have been committed during the same time that Count Six was committed: "on or around the end of July 2019." (Second Superseding Indictment, RE 243, PageID.1945).

**E.  The district court denies Prater's motion to dismiss the superseding indictment, and Prater proceeds to trial.**

Because Prater had already pleaded guilty in Case No. 152 to his participation in the conspiracy with which he was being charged in Case No. 151, he filed a motion to dismiss the superseding indictment on double jeopardy grounds. (Motion, RE 194, PageID.1582-1591).

The Government opposed the motion, arguing that Case No. 152 involved a smaller conspiracy between Prater and other crack cocaine dealers that

was separate from the larger conspiracy involving the Vice Lords. (Response, RE 231, PageID.1738-1744). As the wiretap applications made clear, however, the investigation was directed at a single DTO comprised of Vice Lords members, Prater's sale of crack cocaine was "associated with the DTO" (Affidavit, RE 231-1, PageID.1802), the offenses targeted by the wiretap included distribution of "crack cocaine" (Affidavit, RE 231-1, PageID.1787), and the investigators knew that, like Prater, other Vice Lords in the targeted DTO were crack cocaine distributors. (Affidavit, RE 231-3, PageID.1863, 1864).

Without acknowledging that the Government—not Prater—has the burden of proving that there were two separate conspiracies, the magistrate judge issued a report and recommendation denying Prater's motion to dismiss. (R&R, RE 322, PageID.2609-2616). Prater filed objections to the R&R, but his objections were overruled by the district court, which issued an opinion and order that "agree[d] with and incorporate[d]" the magistrate judge's analysis and denied Prater's motion to dismiss. (Opinion, RE 332, PageID.2665).

The district court focused primarily on the fourth and fifth factors noted in *Sinito*, 723 F.2d at 1256, which direct attention to whether the two charged conspiracies pertain to similar "overt acts" and whether the two conspiracies occurred in the same geographical place. *Id*. The district court opined that the facts pertaining to Case No. 152 were limited to Knoxville, whereas the facts pertaining

to Case No. 151 included several additional cities and States and involved "different drugs in vastly different amounts." (Opinion, RE 332, PageID.2666). In other words, the district court opined that there were two different conspiracies primarily because one of the charged conspiracies was larger than the other. The district court did not appear to recognize the possibility that the latter could simply be a subset of the former.

**F. Trial witnesses testify that the Vice Lords conspired to sell numerous types of drugs and that Prater was rarely seen with a gun.**

Law enforcement witnesses testified at trial about their investigation of the Vice Lords and that Prater was a member of the Vice Lords for purposes of the investigation. (Transcript, RE 541, PageID.8209, 8214, 8276, 8314). Officer Brandon Stryker testified that, although Prater was temporarily pushed out of the Vice Lords, he rejoined them shortly afterward. (Transcript, RE 541-1, PageID.8398-8399). A former member of the Vice Lords, Camaron Billips, testified that all of the Vice Lords, including Prater, "ha[d] an agreement to sell drugs with one another." (Transcript, RE 541-1, PageID.8537).

Kiante Cooper, who was formerly codefendant Alim Turner's girlfriend, testified that Prater was a cousin of codefendant Kedaris Gilmore, who was also a Vice Lord and had been identified as a distributor of crack cocaine.

(Transcript, RE 537-1, PageID.7381). Cooper also testified that she never saw Prater with guns and drugs at the same time. (Transcript, RE 537-1, PageID.7384).

Christopher Hounschell, another former Vice Lord who conspired with the defendants to distribute drugs, testified that a bag that was seized from his home contained "[d]ifferent types of drugs," including "[c]rack, pills, methamphetamine, cocaine." (Transcript, RE 537-1, PageID.7478). Hounschell testified that Prater sold drugs and brokered drug deals for the Vice Lords. (Transcript, RE 537-1, PageID.7532-7533). Specifically, Hounschell testified that Prater made money in the summer of 2019 by selling cocaine. (Transcript, RE 537-1, PageID.7559). When asked which type of drugs codefendant Kedaris Gilmore sold, Hounschell explained that Gilmore sold both methamphetamine and "anything he could get his hands on." (Transcript, RE 537-1, PageID.7559). Hounschell admitted that he himself sold crack cocaine as part of his involvement in the drug conspiracy. (Transcript, RE 537-2, PageID.7694). Hounschell knew that Prater was selling cocaine as part of the conspiracy. (Transcript, RE 537-2, PageID.7695). In fact, Hounschell testified that Prater was not selling methamphetamine or heroin. (Transcript, RE 537-2, PageID.7699).

Hounschell also testified that other Vice Lords carried firearms regularly but that he was not familiar with Prater's habits and had only seen Prater with a gun on one occasion. (Transcript, RE 537-1, PageID.7496).

**G.** **Throughout the litigation, the Government expands and contracts the scope of the Vice Lords DTO as necessary to suit its arguments.**

In the trial court, the Government expanded and contracted the relevant conspiracy to suit the exigencies of the moment. The Government expanded the boundaries of the conspiracy when it was attempting to convict Prater and his codefendants, but contracted the boundaries of the same conspiracy whenever Prater pointed out that, under the Government's capacious conspiracy theory, he had already pleaded guilty to it.

For example, when arguing that Case No. 152 involved an entirely separate side hustle on the part of Prater, the Government argued that the different type of drugs was an important distinction, because the larger conspiracy had not been charged as a crack-distributing conspiracy. (Transcript, RE 887, PageID.12940 ("There's no crack alleged in Case 151.")). But when trying to secure Prater's conviction at trial, the Government argued that all of the defendants were part of the same conspiracy regardless of whether they each chose to sell different types of drugs: "[I]f some of these conspirators decide to deal some marijuana, some decide to sell meth, some decide to deal heroin or variations of all of these, Roxys, blues, Xans, whatever they're dealing, all of them are certainly in it to traffic drugs . . ." (Transcript, 537-2, PageID.7845).

At the charging conference, the Government made the same point when arguing that the verdict form should not ask whether each defendant was guilty of

conspiring to distribute each specific type of drug: "The indictment and the law under . . . 18 U.S.C. § 846, the violation is a conspiracy to violate the Controlled Substances Act, period." (Transcript, RE 541-3, PageID.8797). According to the Government, "[t]he further specification of particular drugs and amounts" in an indictment is primarily intended to "just provide additional notice to the defendants of the types of charges" and of the alleged "objects of the conspiracy." (Transcript, RE 541-3, PageID.8797-8798). The district court agreed with this argument. (Transcript, RE 541-3, PageID.8802).

Likewise, in closing arguments, the Government argued that the Vice Lords were "working together trying to get any drugs they could to sell." (Transcript, RE 541-4, PageID.8865). And on rebuttal, the Government rejected the notion that Prater was involved in a separate conspiracy:

> There was a lot of discussion by Mahlon Prater's lawyer yesterday about this other conspiracy. There's this phrase he kept using. There's another conspiracy. Mahlon Prater is in this conspiracy, ladies and gentlemen. . . . There's proof beyond a reasonable doubt that he's in it, and all the drugs under his name were all reasonably foreseeable to him. It may be that Mahlon Prater's drug of choice in dealing drugs to other people in exchange for money, that it wasn't methamphetamine. Maybe he really liked to deal pills. Chris Hounschell said he liked to deal powder cocaine. So what? What's important for you all is did Mahlon Prater knowingly and voluntarily join the conspiracy to distribute those drugs including the methamphetamine, and the answer is yes.

(Transcript, RE 554, PageID.9129-9130).

The Government, in other words, capitalized on the capacious nature of the conspiracy that it had charged in Case No. 151 in order to convict Prater. Having successfully argued that the overall Vice Lords DTO was so narrow that Prater's crack cocaine conspiracy was not part of it (even though, by all indications, it involved essentially the same people at the same time in the same place), the Government argued the opposite throughout trial: namely, that the Vice Lords DTO was so large that Prater was part of it, regardless of whether he primarily sold different types of drugs.

The Government also argued at closing that the conspiracy was not limited to the eight codefendants who were being tried but that it also included unindicted coconspirators. (Transcript, RE 541-4, PageID.8820). And the Government emphasized in its Rule 29 argument that the conspiracy that it charged was very capacious. As the Government explained, a defendant is liable for a conspiracy even if his involvement is only "slight," and that there was no need for a defendant to be "an active participant in every phase of the conspiracy so long as he is a party to the general conspiratorial agreement." (Transcript, RE 537-2, PageID.7844).

In fact, throughout trial, the Government equated the drug trafficking conspiracy with membership in the Vice Lords, asserting that if a defendant (like Prater) was a member of the Vice Lords, then he was also a participant in the

conspiracy. The Government requested permission to reference Prater's affiliation with the Vice Lords, on the theory that "evidence of gang-affiliation is relevant to prove the existence of the conspiracy and the relationship among defendants." (Brief, RE 402, PageID.3258). The district court granted the motion, on the understanding that "it remained the government's burden to prove that membership in the Vice Lords was synonymous with membership in the conspiracy . . ." (Order, RE 454, PageID.3675 (quoting *United States v. Williams*, 158 F. App'x 651, 653-654 (6th Cir. 2005)). The Government's opening argument asserted that the "gang affiliation evidence is also going to constitute evidence of their agreement. You're going to learn that that's what a conspiracy is." (Transcript, RE 541, PageID.8115). According to the Government, in other words, there was a single, large conspiracy that was coextensive with membership in the Vice Lords.

When the Government responded to various arguments that were asserted by Prater's codefendants, the Government also took positions that are difficult to align with its argument that Prater's crack-cocaine sales were entirely separate from the larger DTO. For example, in response to codefendant Demetrius Bibbs' Rule 29 motion arguing that he could not be liable for the conspiracy charge in Count One because he was not part of the Vice Lords and did not have any interaction with any of the other defendants except for Camaron Billips, the Government explained that the agreement between Billips and Bibbs was a subset

of the larger conspiracy. (Transcript, RE 537-2, PageID.7842). Because Billips and Bibbs were linked together, Bibbs was linked to the larger Vice Lord conspiracy through his participation with Billips. (Transcript, RE 537-2, PageID.7842). In other words, Bibbs' drug transactions with Billips made him part of the larger conspiracy. The Government did not explain why the same analysis would not apply to the crack cocaine transactions between the "unknown persons" and Prater, such that they would also be part of the larger conspiracy.

The Government made a similar argument with respect to codefendant Jyshon Forbes, who contended that he was involved in the conspiracy for only a single day in August 2019. (Transcript, RE 541-3, PageID.8809). The Government argued that "the charge in Count 1 is a conspiracy to distribute controlled substances," and that all of the charged substances were reasonably foreseeable to all of the defendants, including Forbes, particularly because of his "relationship with Kedaris Gilmore." (Transcript, RE 541-3, PageID.8809-8810). Nevertheless, the Government agreed to limit Forbes' exposure solely to methamphetamine. (Transcript, RE 541-3, PageID.8810). But that, of course, is an admission that the larger conspiracy is capable of being broken down into smaller subsets: here, a subset that included Forbes' relatively limited role in particular conduct involving methamphetamine. Again, the Government did not explain why Prater's dealing of crack cocaine would not be "reasonably foreseeable" to all of the Vice Lords,

particularly when Gilmore—who was already a known crack dealer—would sell "anything he could get his hands on." (Transcript, RE 537-1, PageID.7559).

**H.  The jury acquits Prater of Count Seven but convicts him of the remaining charges.**

Ultimately, the jury acquitted Prater of Count Seven but convicted him on Counts One, Two, Four, and Six. (Verdict, RE 519, PageID.4916, 4921, 4924-4926).

Prater asserted a Rule 29 motion, arguing that his double-jeopardy rights were violated when he was charged in Case No. 151. (Transcript, RE 537-2, PageID.7824). He also observed that there was no testimony that he aided and abetted anyone else in possession of a firearm in furtherance of the conspiracy that was charged in Count One. (Transcript, RE 537-2, PageID.7825; *see also* Motion, RE 531, PageID.6959-6960). Prater's codefendant, Bibbs, argued in his Rule 29 motion that a fatal variance had occurred because the Government had proved a different conspiracy against him than the conspiracy that was charged in Count One.

In its joint response to the codefendants' Rule 29 motions, the Government argued, in part, that Bibbs' variance argument was wrong because "the mere fact that a conspiracy can be subdivided . . . does not mean that multiple conspiracies existed." (Response, RE 534, PageID.6987 (quoting *United States v. Wilson*, 168 F.3d 916, 924 (6th Cir. 1999)).

The district court denied Prater's Rule 29 motion. (Order, RE 869, PageID.12784).

## I.   The PSR combines Case No. 151 and Case No. 152 in order to calculate Prater's sentence.

The probation officer calculated the applicable Guidelines range by combining both Case No. 151 and Case No. 152. (PSR, RE 878, PageID.12846). The PSR noted that Prater's plea agreement in Case No. 152 "has no impact on the sentencing guideline range as he is being held accountable for all known relevant conduct in that case." (PSR, RE 878, PageID.12865). Despite Prater's plea agreement in Case No. 152, the PSR did not apply a downward adjustment for acceptance of responsibility under USSG § 3E1.1. (PSR, RE 878, PageID.12860).

At sentencing, the district court denied Prater's objection to the PSR's failure to give him a downward adjustment for acceptance of responsibility and indicated only that it had "given consideration" to his guilty plea in Case No. 152 when it fashioned his sentence. (Transcript, RE 903, PageID.13303, 13338*; see also id.*, PageID.13318).

Ultimately, Prater was sentenced to 324 months on Counts One, Four, and Six, followed by a consecutive 60 months on Count Two, for a total of 384 months. (Judgment, RE 890, PageID.12979). He was also sentenced to a concurrent 240-month sentence on the conspiracy offense to which he had pleaded guilty in Case No. 152. (Judgment, RE 890, PageID.12979).

Prater timely filed this appeal. (NOA, RE 892, PageID.12989).

## SUMMARY OF THE ARGUMENT

First, the district court erred in denying Prater's motion to dismiss Count One on double-jeopardy grounds. Not only did the district court fail to recognize that the burden was on the Government to show that Case No. 152 was not a subset of Case No. 151—rather than on Prater to show the opposite—but all of the *Sinito* factors weigh in favor of Prater. The timeframe of the conspiracy alleged in Case No. 151 completely subsumes the conspiracy charged in Case No. 151; both charged conspiracies involved known crack distributors in the Knoxville Vice Lords; both indictments charged the same offense; both indictments charged overt acts in furtherance of distributing controlled substances; and Knoxville was the base of operations of both alleged conspiracies.

Second, there was insufficient evidence to convict Prater of Count Two. The Government failed to prove that Prater had advance knowledge that his codefendants would use, carry, or possess any particular firearm. Although one witness (Michael Stewart) testified at trial that Prater himself had carried a gun on one occasion, that testimony was the basis of Count Seven, not Count Two—and the jury acquitted Prater of Count Seven.

Third, the district court erroneously believed that Prater was not entitled to a sentencing reduction for acceptance of responsibility under USSG § 3E1.1. Even

though Prater went to trial in Case No. 151, he pleaded guilty in Case No. 152. The district court erred as a matter of law in concluding that a § 3E1.1 reduction was unavailable.

## ARGUMENT

I. **Prater's double jeopardy rights were violated, because he had already pleaded guilty in Case No. 152 to the same drug trafficking conspiracy with which he was charged in Case No. 151.**

A. **Standard of review.**

The district court's legal rulings are reviewed de novo. *United States v. Lawrence*, 735 F.3d 385, 405 (6th Cir. 2013). The district court's factual findings are reviewed for clear error. *In re Grand Jury Proc.*, 797 F.2d 1377, 1380–81 (6th Cir. 1986). *See also United States v. Jones*, 858 F.3d 221, 225 (4th Cir. 2017) (where "the parties dispute the legal conclusion applied to the facts and not the facts themselves, this court reviews the district court's conclusion de novo") (assessing Double Jeopardy argument).

B. **Double jeopardy prevents the Government from carving a single conspiracy into multiple conspiracies and charging them separately.**

The Double Jeopardy clause "protects criminal defendants from prosecution following conviction or acquittal for the same offense, and also prohibits infliction of 'multiple punishments for the same offense imposed at a single proceeding.'" *Jones v. Harry*, 405 F. App'x 23, 28 (6th Cir. 2010) (quoting *Jones v. Thomas*, 491 U.S. 376, 381 (1989)).

Ordinarily, double-jeopardy challenges are reviewed under the *Blockburger* "same evidence" test. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). But the Sixth Circuit—like other federal courts of appeals—has recognized "the inherent infirmities in applying the same evidence test to conspiracy cases." *Sinito*, 723 F.2d at 1256.

The problem stems from the fact that "a single agreement to commit an offense does not become several conspiracies because it continues over a period of time, and that there may be such a single continuing agreement to commit several offenses." *Braverman v. United States*, 317 U.S. 49, 52 (1942). Because conspiracies can involve many different acts and coconspirators, the Government could improperly charge a defendant with participating in the same conspiracy twice, simply by focusing on two different aspects of the same overall agreement:

> The government, in a criminal conspiracy case, is often presented with a host of co-conspirators and a multiplicity of overt acts. An overzealous prosecutor, in drafting the indictment, could choose certain overt acts in one indictment and a different set of overt acts in a second indictment, thereby carving up one conspiracy into two or even more artificial offenses. However, such a dissection would circumvent a charge of double jeopardy, since each set of overt acts would require different evidence.

*Sinito*, 723 F.2d at 1256.

To accommodate this difficulty, a court must not use the *Blockburger* test when determining whether multiple conspiracy charges violate double jeopardy

but must instead determine whether two charged conspiracies stem from a single agreement. "The ultimate question is whether the evidence shows one agreement or more than one agreement." *In re Grand Jury Proc.*, 797 F.2d at 1380. That is because "[i]n a conspiracy case it is the agreement which forms the nucleus of the offense." *Id.* at 1256. If there is only one overarching agreement, there is only one conspiracy, no matter how many different overt acts the conspiracy could be split into. *Id.*

The determination of whether two charged conspiracies are actually a single agreement is made by weighing "the totality of the circumstances" under "*Sinito*'s five-factor test." *United States v. Wheeler*, 535 F.3d 446, 456 (6th Cir. 2008). Under the *Sinito* test, courts must weigh: "the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place." *Sinito*, 723 F.2d at 1256.

## C. The district court failed to recognize that the burden of proof is on the prosecution.

Notably, the determination of whether two charged conspiracies are actually a single conspiracy requires "burden-shifting among the parties." *Corral v. United States*, 562 F. App'x 399, 406 (6th Cir. 2014). "The burden is on the defendant to show that a single conspiracy exists, but, because the government

typically has better access to evidence, that burden is satisfied if the defendants advance a non-frivolous or prima facie showing of a single conspiracy." *In re Grand Jury Proc.*, 797 F.2d at 1380. "The burden then shifts to the government to show separate conspiracies by a preponderance of the evidence." *Id.*

There is no doubt that Prater made a prima facie showing that both charges arose from a single conspiracy. Despite this showing, neither the magistrate judge nor the district court appears to have recognized that the burden was on the Government to prove that it was "not seeking to prosecute the same offense a second time" instead of upon Prater to prove that it was. *United States v. Jabara*, 644 F.2d 574, 576–77 (6th Cir. 1981). In fact, the magistrate judge (whose report and recommendation the district court "agree[d] with and incorporate[d]" (Opinion, RE 332, PageID.2665)) faulted Prater for failing to provide evidence to support his argument: "Defendant fails to point to any additional evidence supporting his claim that the two charged conspiracies involve the same co-conspirators." (R&R, RE 322, PageID.2611). Under *Jabara*, Prater had no legal obligation to point to additional evidence; only the Government did.

This flaw in the district court's analysis is an important failure. "If the burden shifts, the government must prove by a preponderance of the evidence that the indictments refer to two separate criminal agreements." *Jones*, 858 F.3d at 225 (internal quotation marks omitted). The Government did not submit any such

evidence. Instead, it supported its case primarily by arguing that, "comparing[ ] those two indictments alone demonstrate[s] that there is a qualitative and quantitative difference between" the two charged conspiracies. (Transcript, RE 887, PageID.12944).

Not only did the Government's ensuing argument demonstrate merely that Case No. 152 was a subset of Case No. 151 (*see* Transcript, RE 887, PageID.12944-12945), but it was error for the district court to allow the Government to carry its burden by relying upon the indictments alone. The reason for shifting the burden of proof is that "the government controls the precision with which the second offense is charged, the defendant's own testimony is unlikely to carry much weight, and he is unable to offer his co-defendants immunity for their testimony." *United States v. Ragins*, 840 F.2d 1184, 1192 (4th Cir. 1988). As a result, it will "often be impossible for the defendant to carry the burden of proving that the two offenses charged against him are in reality one and the same" unless the indictments explicitly say so—which, of course, they never will. *Id.*

Without holding the prosecution to its burden of proof and instead allowing the Government to rely almost exclusively on the language of the two indictments, the district court failed to compensate for the Government's ability to "nullify the constitutional protection against double jeopardy by artful pleading." *Ragins*, 840 F.2d at 1190. The Government should not be able to "reap the benefits

of its own vaguely drafted indictments" or to capitalize on differences between the two indictments that the Government itself has "manufacture[d]" simply through the manner in which the two offenses have been charged. *United States v. Scott*, 760 F. App'x 151, 154 (4th Cir. 2019). Unfortunately, that is what happened here.

**D.** **Under the *Sinito* factors, the Government failed to prove that there was more than one conspiracy.**

The district court also erred in analyzing the *Sinito* factors. The problem with the district court's analysis is that it looked to whether there were differences between the charged conspiracies rather than to whether the smaller set of acts was subsumed within the larger conspiracy. As the Fourth Circuit has explained, that error is "a glaring, fundamental flaw" in the analysis. *Jones*, 858 F.3d at 226.

In *Jones*, the defendant was first charged in the Eastern District of Virginia for conspiracy to distribute cocaine—a charge that stemmed from an attempted purchase of 17 kilograms of cocaine at a hotel in Lynchburg, Virginia on one day in August 2012. *Id*. at 224. After he pleaded guilty to that conspiracy charge, the defendant was indicted in the Western District of Virginia for conspiracy to distribute 1,000 kilograms of cocaine in the Lynchburg area over a period of 14 years: from 1998 to 2012. *Id*.

The Fourth Circuit rejected the Government's argument that the disparity between the two charges meant that they involved different conspiracies:

In the context of double jeopardy, we look to the *degree of overlap* not the *degree of similarity* to determine whether two charges are in reality a single offense. Indeed, the government could always separate a smaller piece from the larger conspiracy and that smaller piece would look dissimilar to the large piece. And that is what the Government has attempted to do here. Because the Lynchburg Conspiracy's scope, reach, and object completely overlapped with the Kirkley Hotel Transaction's scope, reach, and object, the Government has simply split one large conspiracy into a smaller and larger piece rather than identify two separate conspiracies. This is precisely what the Double Jeopardy Clause prohibits. The Double Jeopardy Clause cannot be avoided through artful pleading or "the simple expedient of dividing a single crime into a series of temporal or spatial units."

*Id*. at 226 (internal citations omitted).

What happened in *Jones* is very similar to what happened here. The relevant circumstances between the two charges—including "an overlap in time, a substantial overlap in location, intertwined objectives, and what we infer to be a high likelihood of the same underlying criminal organization [involved]"—demonstrate that Case No. 151 charged Prater with the same conspiracy to which he pleaded guilty in Case No. 152. *United States v. Reyes-Correa*, 971 F.3d 6, 13 (1st Cir. 2020). At minimum, the Government did not bear its burden of proving otherwise.

Each of the five *Sinito* factors cuts against the Government's position.

### 1. Time.

Because the central question is whether one indictment charges a conspiracy that is in truth a subset of a larger conspiracy (rather than a different conspiracy altogether), where one conspiracy is inclusive of the other or overlaps significantly in time, this factor will weigh in favor of finding a single conspiracy. *See United States v. Kistner*, 590 F. App'x 514, 517 (6th Cir. 2014) (holding that months-long overlap between conspiracies weighed in favor of finding a single conspiracy); *see also United States v. Rabhan*, 628 F.3d 200, 205 (5th Cir. 2010) ("An overlap in time periods between two alleged conspiracies favors a finding of a single conspiracy, especially when that overlap is substantial.").

Here, the conspiracy charged in Case No. 151 completely embraces the conspiracy charged in Case No. 152. The superseding indictment in Case No. 151 alleged that the conspiracy lasted from July 15, 2018 through November 22, 2019. (Superseding Indictment, RE 78, PageID.149). In case No. 152, the indictment alleged that the conspiracy began and ended wholly within that period of time: "[A]t least as early as in or around December of 2018, continuing through in and around April of 2019." (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1).

Because the smaller conspiracy charge is completely subsumed in the larger conspiracy charge, this factor suggests that the Government carved the smaller charge out of a single, larger conspiracy. In *Jones*, for example, the second

conspiracy charge "completely embraced the time period covered" by the previous conspiracy charge—just as it does here. *Jones*, 858 F.3d at 227. A single agreement to commit an offense does not become multiple conspiracies simply because the conspiracy "continues over a period of time." *Braverman*, 317 U.S. at 52.

It does not matter that the conspiracy charged in Case No. 151 extends both before and after the conspiracy charged in Case No. 152. In *Scott*, for example, the Double Jeopardy Clause barred prosecution of a defendant for an alleged 12-year conspiracy (between 2003 and 2015) when he had previously been prosecuted for a 2-year conspiracy (between 2005 and 2006):

> The government notes that the 2016 indictment extended several years both before and after the 2006 indictment and therefore necessarily encompassed conduct for which Scott has not yet been punished. But we are not concerned with whether the 2016 indictment covers more conduct than the 2006 indictment. Rather, we look to whether the 2016 indictment seeks to punish any of the conduct already covered under the 2006 indictment. The overlapping time frame suggests that it does.

*Scott*, 760 F. App'x at 154–55.

The magistrate judge (whose reasoning the district court adopted) ruled that this factor cut against Prater because "the conspiracies involve different lengths and intervals of time." (R&R, RE 322, PageID.2611). That is incorrect, because it fails to recognize the pertinent point: namely, that the smaller charged conspiracy is a subset of the larger. This factor favors Prater.

## 2.     Persons Acting as Co-Conspirators

"Under this factor, the relevant question is not whether the same persons were actually charged in each indictment, but rather whether the same persons were involved in the activities charged under each indictment, unindicted persons included." *United States v. Meda*, 812 F.3d 502, 509 (6th Cir. 2015) (citing *Wheeler*, 535 F.3d at 451).

The magistrate judge observed that Prater was the only named conspirator in Case No. 152, whereas Case No. 151 "involved a significant increase in both named and unnamed co-conspirators." (R&R, RE 322, PageID.2612). But, again, that is consistent with the former being a subset of the latter. This factor cuts in favor of Prater, not against him.

That Prater is the only named conspirator in Case No. 152 demonstrates only that the Government chose to draft the indictment narrowly in an attempt to "carve out a portion of a larger conspiracy and allege it as a separate conspiracy." *United States v. Levy*, 803 F.2d 1390, 1395 (5th Cir. 1986). Courts give little credence to differences in the individuals involved in each charged conspiracy where those differences have been manufactured by the government. *See United States v. Shepard*, 89 F. Supp. 2d 884, 888 (W.D. Mich. 1999) ("[Defendant] should not be punished twice because of the government's failure to name or inability to determine the identities of co-conspirators when Shepard was indicted in Texas. Therefore, this

factor weighs in favor of finding a single conspiracy for purposes of double jeopardy."); *Jones*, 858 F.3d at 227 ("[T]he CI was the fourth person and the only identified difference in persons involved. But the Government created that difference. We give little weight to a difference the government itself manufactures.").

By fixating on the fact that Prater is the only named conspirator in Case No. 152, the district court ignored "the relevant question under the second factor," which is "not whether the same persons were actually charged in each indictment, but rather whether the same persons were involved in the activities charged under each indictment, unindicted persons included." *Wheeler*, 535 F.3d at 451. And here, the Government never proved that Prater's coconspirators were anyone other than the other Vice Lords upon whom the Government's investigation was focused, many of whom were ultimately indicted in Case No. 151.

In fact, the available evidence suggests precisely the opposite. The individuals to whom Prater sold the drugs could not have been his coconspirators, both because they were confidential informants and because a mere buy-sell relationship does not demonstrate a conspiracy. *United States v. Deitz*, 577 F.3d 672, 680 (6th Cir. 2009). Instead, the only other obvious coconspirators are the individuals with whom he was later charged as participating in a large drug conspiracy: his fellow Vice Lords.

After all, Prater was a member of the Vice Lords conspiracy when he made the crack sales in December 2018 and January 2019. The wiretap affidavits state that Prater "conduct[ed] crack cocaine transactions and business associated with the DTO" (Affidavit, RE 231-1, PageID.1802), that the confidential informant made "controlled buys of crack cocaine from a single member of the DTO," (Affidavit, RE 231-2, PageID.1844), that the controlled buys of crack from Prater revealed a "slice of the DTO's operations" (Affidavit, RE 231-1, PageID.1802), that distribution of "crack cocaine" was one of the offenses that the Vice Lords investigation was targeting (Affidavit, RE 231-1, PageID.1787), and that several other Vice Lords were known distributors of "crack cocaine," including Prater's cousin, Kedaris Gilmore (Affidavit, RE 231-3, PageID.1863, 1864).

Christopher Hounschell—a fellow member of the Vice Lords conspiracy—also had crack cocaine on him when he was arrested, and he testified that Prater made money by selling cocaine (not methamphetamine), even though Case No. 151 did not allege a cocaine distribution conspiracy. (Transcript, RE 537-1, PageID.7559). Hounschell also testified that Gilmore—Prater's cousin, and a fellow Vice Lord—sold "anything he could get his hands on." (Transcript, RE 537-1, PageID.7559). And Billips testified that all of the Vice Lords, including Prater, "ha[d] an agreement to sell drugs with one another." (Transcript, RE 541-1, PageID.8537).

The Government's position that Case No. 152 had nothing to do with Case No. 151 is predicated on the assertion that the Vice Lords—even though they distributed numerous other types of drugs, including powder cocaine, and were willing to traffic any type of drug that would allow them to turn a profit—had a peculiar aversion to distributing cocaine base. The available evidence shows the opposite; and, more important, the Government did not put on any evidence to support it. As the wiretap affidavits make clear, Prater's indictment in Case No. 152 came as a result of the Government's investigation into a single DTO: the Vice Lords conspiracy. This factor, too, favors Prater.

### 3. Offenses charged.

Where "precisely the same statutory offenses" are charged, this factor weighs in favor of finding a single conspiracy. *In re Grand Jury Proc.*, 797 F.2d at 1382; *Meda*, 812 F.3d at 509. The two indictments here both charge Prater with conspiracy to possess with intent to distribute a controlled substance under 21 U.S.C. §§ 841(a)(1) and 846. The only distinction is the type of controlled substances that are at issue.

But that distinction does not make any difference. As the Government argued at the charging conference in this case, a conspiracy charge under 21 U.S.C. §§ 841(a)(1) and 846 requires proof only of a conspiracy to distribute a "controlled substance." (Transcript, RE 541-3, PageID.8797-8798). The specific type of

controlled substance does not need to be named in the indictment. *Corral*, 562 F. App'x at 407 n.4.

Thus, even where the two charges assert conspiracies to distribute different types of controlled substances, this *Sinito* factor weighs "heavily" in favor of "a single, unified conspiracy to distribute a controlled substance." *Corral*, 562 F. App'x at 406, 408. *See also id*. at 406–07 ("The charges only differentiate between § 841(b)(1)(A) subsections, which accounts for the different controlled substances involved in each indictment."); *Scott*, 760 F. App'x at 155 (describing different types of controlled substances alleged in two different indictments as a "minor distinction" between the two). "[A] showing that the same predicate crimes were committed under different factual circumstances only tends to prove that the pattern of activity was more widespread than the initial indictment originally conveyed. It does not tend to prove a separate pattern of conduct." *Wheeler*, 535 F.3d at 454. *See Shepard*, 89 F. Supp. 2d at 888–889 (where the defendant was charged "with a conspiracy involving marijuana" and then separately "charged with a conspiracy involving marijuana, cocaine, and heroin," the court concluded that "[a] single agreement to conspire could encompass marijuana, cocaine, and heroin").

The magistrate judge opined that this factor weighed "both for and against" Prater. (R&R, RE 322, PageID.2613). In reality, it weighs solely in his favor.

### 4. The overt acts charged/scope of activity.

Under the "overt acts" factor, the court examines "whether the particular acts alleged in the indictment are part of a larger, unified conspiracy for which the defendant has already been [convicted]." *Sinito*, 723 F.2d at 1258. Unified conspiracies require "assent of its members to contribute to a common enterprise." *United States v. Kelley*, 849 F.2d 999, 1003 (6th Cir. 1988). "Seemingly independent transactions may be revealed as parts of a single conspiracy by their place in a pattern of regularized activity involving a significant continuity of membership." *Id*. (internal quotation marks and citation omitted). Evidence of the "unity essential to a conspiracy," *id*., can be found in the common goal of the conspirators and the purpose served by the co-conspirators' activities. *See United States v. Maddox*, 944 F.2d 1223, 1232 (6th Cir. 1991).

To be sure, the indictment in Case No. 152 does not contain all of the same overt acts that were recounted in the indictment in Case No. 151. But the way in which the Government has chosen to frame the indictments is not dispositive of this issue. "[S]imply comparing different overt acts in the indictment does not accurately determine the issue" because that analysis would "permit the government arbitrarily to split unitary . . . conspiracies and to initiate as many prosecutions." *Sinito*, 723 F.2d at 1258. The Government cannot "subject an accused to repeated prosecutions for what is in reality the same criminal conspiracy, simply by selecting

a different set of overt acts" to include in each indictment or prosecution. *Jones*, 858

F.3d at 227 (quotation marks omitted). Because the decision whether to include

particular overt acts in the indictment "is in the government's control, not [the

defendant's]," any imprecision or unclarity over whether the charged overt acts stem

from the same conspiracy does not weigh in the government's favor. *Scott*, 760 F.

App'x at 156.

By deferring to the differences between the overt acts alleged in the two

indictments here, the district court made the same mistake that was made in *Corral*.

In *Corral*, the defendant was indicted first in California for a poly-drug-distribution

conspiracy and later in Michigan for a cocaine-distribution conspiracy. *Corral*, 562

F. App'x at 401. The district court found that the overt acts were "clearly different,"

but this Court ruled that, in this respect, "the district court's factual findings were

clearly erroneous." *Id*. at 408. As the Court observed, "[T]he overt acts in these

indictments show a common goal and purpose: to conspire to distribute a controlled

substance. . . . The overt acts charged in Michigan and California were all related to

Corral's purpose of distributing a controlled substance, which was the common goal

of his co-conspirators." *Id.*

Here, similarly, the district court found that this factor weighed against

Prater because the two charged conspiracies "involve distribution of different drugs

in vastly different amounts." (Opinion, RE 332, PageID.2666). But by focusing on

alleged differences between the two indictments, the district court failed to recognize that the smaller charged conspiracy was a subset of the larger conspiracy to distribute controlled substances, regardless of the fact that each indictment referenced a different type of drug. *See also Maxwell v. United States*, 617 F. App'x 470, 473 (6th Cir. 2015) (only a single conspiracy despite one conspiracy charge for distributing cocaine base and one conspiracy charge for distributing heroin because the counts otherwise alleged "identical dates, participants, and locations"); *Shepard*, 89 F. Supp. 2d at 889 ("A single agreement to conspire could encompass marijuana, cocaine, and heroin.").

In *Sinito*, by contrast, there was not a single, unified conspiracy where the first conspiracy charged loansharking and the second charged murder, gambling, drug trafficking, and obstruction of justice. *Sinito*, 723 F.2d at 1258. The indictments here are nothing like the indictments at issue in *Sinito*.

In short, the fourth *Sinito* factor also favors Prater. *Corral*, 562 F. App'x at 408 (finding district court's factual findings "clearly erroneous").

## 5. Location.

The final *Sinito* factor weighs in favor of a single conspiracy if both charged conspiracies share a common location. *Sinito*, 723 F.2d at 1256. Here, both indictments alleged that the conspiracy was located "in the Eastern District of

Tennessee and elsewhere." (Case No. 3:19-cr-152, Indictment, RE 1, PageID.1; Superseding Indictment, RE 78, PageID.149).

The district court believed that this factor weighed strongly in favor of the Government because the conspiracy alleged in Case No. 152 "was limited to Knoxville," whereas the conspiracy alleged in Case No. 151 encompassed not only Knoxville but also several other cities in Tennessee, as well as California. (Opinion, RE 332, PageID.2666). But that analysis, again, fails to recognize that the smaller charged conspiracy is a subset of the larger one.

Instead, as the Government itself has made clear, its investigation targeted the Knoxville chapter of the Vice Lords. (Response, RE 231, PageID.1697; Affidavit, RE 231-1, PageID.1791-1795). As the trial testimony elaborated, many of the central characters in the Case No. 151 conspiracy—including Alim Turner, Kedaris Gilmore, Ushery Stewart, and Prater—were primarily located in Knoxville. The conspiracy charged in Case No. 151 encompassed additional jurisdictions only because one of the coconspirators (Ronald Turner) was in prison, and because the Vice Lords sourced some of their drugs from California and elsewhere in Tennessee. In other words, the geography of the conduct pertaining to Case No. 152 is more limited than the geography of the conduct pertaining to Case No. 151 because it pertains to only one subset of the larger conspiracy: namely, the six drug sales that Prater conducted in Knoxville. *See United States v. Maslin*, 356 F.3d 191, 197 (2d

Cir. 2004) ("That the Binghamton case included more proof about the additional sales of lower grade marijuana from the south does not make it a separate conspiracy.").

"When two alleged conspiracies overlap geographically, it is appropriate to consider where they are based as an indicator of whether the geographic overlap is significant." *Rabhan*, 628 F.3d at 208. Both alleged conspiracies here were based not merely in the Eastern District of Tennessee but in Knoxville. Contrary to the district court's conclusion, this factor, too, favors Prater. *See id.* (finding only a single conspiracy where Georgia was a "base" of operations for both alleged conspiracies).

### E. The Government failed to prove that Prater was involved in multiple conspiracies.

"Where several of these factors overlap between the conspiracies, the conclusion follows that the conspiracies are one and the same." *Corral*, 562 F. App'x at 406. Here, all five of the factors cut in favor of Prater. The timing of the larger conspiracy completely encompasses the smaller charged conspiracy; the Vice Lords were involved in both charged conspiracies; both indictments charged the same offense; both indictments charged overt acts in furtherance of a single goal—namely, selling controlled substances; and the "base" of operations of both alleged conspiracies was the same: Knoxville, Tennessee.

The Government did not carry its burden to prove otherwise. As in *Rabhan*, "[i]n the face of a strong prima facie case, the government elected to produce no evidence tending to show that more than one conspiracy existed. The government has therefore failed to carry its burden of persuasion to establish by a preponderance of the evidence that two separate conspiratorial agreements existed." *Rabhan*, 628 F.3d at 208.

If the two convictions really did stem from two different conspiracies, the Government had ample opportunity to put on evidence to that effect. After all, it had already secured Prater's guilty plea in Case No. 152. If the Government was unable or unwilling to identify Prater's coconspirators or the source of the cocaine base that formed the basis of Case No. 152, those are gaps in the evidence that were manufactured by the Government. The Government's failure to flesh out the evidence does not mean that Prater can be punished twice for the same conduct. *Jones*, 858 F.3d at 227; *Shepard*, 89 F. Supp. 2d at 888. To the extent that the Government had evidence that all of the unindicted coconspirators were entirely unconnected to the larger Vice Lords conspiracy and that Prater was selling crack cocaine in a venture that was entirely separate from the other Vice Lords who were also selling crack cocaine, Prater could have also had the opportunity to rebut any such evidence. *See Ragins*, 840 F.2d at 1193 (noting Fifth Amendment implications). The Government chose not to make that showing.

As the wiretap affidavits make clear, both of Prater's indictments arose from the same investigation of the same DTO. And as the Government previously explained, a defendant is part of a conspiracy even if his involvement is only "slight," and there is no need for a defendant to be "an active participant in every phase of the conspiracy so long as he is a party to the general conspiratorial agreement." (Transcript, RE 537-2, PageID.7844); *see also United States v. Hall*, 20 F.4th 1085, 1106 (6th Cir. 2022).

It does not matter that Prater pleaded guilty to a smaller set of overt acts than the full-blown facts that were later charged in a larger conspiracy indictment. That is precisely what happened in *Jones*, where the defendant was first indicted for a conspiracy related to a single transaction and then later indicted for a conspiracy for a 14-year operation of a drug-trafficking ring. *Jones*, 858 F.3d at 229. The *Jones* court rejected the Government's argument that it was improper "to dismiss a drug conspiracy that lasted 14 years . . . involving different coconspirators and different sources of supply, because the defendant pled guilty to one attempted purchase of cocaine in the Eastern District of Virginia." *Id*. As *Jones* ruled, this argument "is without merit. The law is clear that it does not matter which indictment is returned first, and the government cannot avoid double jeopardy by splitting one large conspiracy into two." *Id*.

Here, likewise, the Government appears to have later regretted indicting Prater separately in Case No. 152. But, as in *Jones*, they had already made the determinative choice.

As noted above, the Government has expanded and contracted the scope of the conspiracy that is alleged in Case No. 151 in order to suit its purposes, construing it narrowly when convenient to do so and more broadly when a narrow construction would be too limiting. For example, codefendant Ronald Turner argues in his opening brief that there were multiple, separate conspiracies. (R. Turner Br. at 17-19). Presumably, the Government will respond that all of Mr. Turner's relevant conduct was committed as part of one larger conspiracy. And yet, it will try to cordon off Prater as having been engaged in his own, independent side hustle, entirely unconnected to the Vice Lords.

The Government cannot salvage Prater's conviction by artificially expanding and contracting the scope of the Vice Lords DTO at its convenience. The Government failed to meet its burden of showing that Case No. 151 involves a conspiracy that is entirely separate from the conspiracy to which Prater already pleaded guilty in Case No. 152. His conviction and sentence should be reversed.

**II.    There was insufficient evidence to convict Prater of Count Two, which charged him with aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime.**

Because Count One must fail, Prater's conviction on Count Two—which was predicated upon Count One—must also fail.

But even if Count One is not barred by the Double Jeopardy Clause, the jury lacked sufficient evidence to convict Prater under Count Two, which charged him with aiding and abetting the possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(a).

**A.    Standard of review.**

This Court's review examines the evidence in the light most favorable to the prosecution, asking whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

**B.    There was insufficient evidence to prove that Prater had advance knowledge that his codefendants would possess any particular firearm.**

18 U.S.C. § 924(c)(1)(a) makes it a crime for anyone to "use[ ] or carr[y]" or "possess[ ]" a firearm in furtherance of a drug trafficking crime. *Id*. In Count Two, Prater was charged with aiding and abetting the possession of a firearm by other members of the drug distribution conspiracy that was charged in Count One. (Second Superseding Indictment, RE 243, PageID.1945).

A defendant is liable for aiding and abetting a crime "if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). For purposes of a § 924(c) offense, the Government must prove that the defendant had "advance knowledge" that the principal would use, carry, or possess a firearm in furtherance of the underlying substantive offense. *Id*. at 78. That is the only sort of knowledge "that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense." *Id*.

The Government failed to prove that Prater had advance knowledge that his codefendants would use, carry, or possess any particular firearm. Only two portions of trial testimony linked Prater to a firearm, and neither of them suffices to prove the requisite knowledge.

First, Michael Stewart testified that, on one occasion in July 2019, Prater placed a handgun on top of a dresser when he retrieved a bag of methamphetamine. (Transcript, RE 537, PageID.7089). But that testimony formed the basis of the charges asserted against Prater in Counts Six and Seven, not Count Two. Count Six charged Prater with distributing 50 grams of methamphetamine on

one occasion in July 2019, and Count Seven charged Prater under § 924(c)(1)(a) with possessing a firearm in connection with that substantive crime. (Transcript, RE 887, PageID.12955).

As the Government explained, Count Two charged Prater with a § 924(c) violation based on conduct that was "separate and distinct" from the § 924(c) violation with which Prater was charged in Count Seven. (Transcript, RE 887, PageID.12955). According to the Government, the predicate crime for Count Two was the overall drug conspiracy that was charged in Count One. (Transcript, RE 887, PageID.12955). As the Government acknowledged (Response, RE 231, PageID.1745-1746), Counts Two and Seven could not be predicated on the same conduct, because those two counts could both be brought against Prater only if there were "separate predicate acts." *United States v. Graham*, 275 F.3d 490, 520 (6th Cir. 2001). *See also United States v. Vichitvongsa*, 819 F.3d 260, 266-269 (6th Cir. 2016)

Ultimately, the jury rejected Stewart's testimony and acquitted Prater of Count Seven. (Verdict, RE 519, PageID.4926). And because Stewart's testimony related to an alleged possession of a firearm that was a "separate predicate act[]" from the alleged aiding and abetting possession of a firearm that was charged in Count Two, Stewart's testimony cannot support a conviction on Count Two. *Graham*, 275 F.3d at 520; *Vichitvongsa*, 819 F.3d at 266-269.

Second, Christopher Hounschell testified that he saw Prater with a firearm on one unspecified occasion. But Hounschell never testified that Prater (who had never previously been convicted of a felony) carried a firearm in connection with any offense or that Prater knew that codefendants possessed firearms. In fact, he testified that Prater did not regularly carry firearms:

> Q. Have you known Alim Turner to regularly carry firearms?
>
> A. Yes, sir.
>
> * * *
>
> Q. How about Mahlon Prater?
>
> A. I'm not—no, no, sir. I've seen him with one before.
>
> Q. Excuse me?
>
> A. I've seen him with one before.
>
> Q. All right. But your familiarity with firearms possession is more with Alim Turner and Ushery Stewart?
>
> A. Yes, sir.

(Transcript, RE 537-1, PageID.7495-7496).

As *Rosemond* made clear, it is not enough for the Government merely to prove that Prater was part of a conspiracy in which other conspirators possessed guns. Instead, a § 924(c) defendant in Prater's shoes must intend not merely to further a drug trafficking crime but an "armed" drug trafficking crime. *Rosemond*, 572 U.S. at 80. The Court explained how the Government might meet its burden.

For instance, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Rosemond*, 572 U.S. at 78 n.9. There is no evidence here that Prater witnessed a coconspirator use or display a firearm.

In that respect, this case is similar to *United States v. Coop*, 807 F. App'x 442 (6th Cir. 2020), which reversed a conviction under *Rosemond*. In *Coop*, this Court pointed out that "there is no evidence that the gun was visible" to the defendant even though his codefendant was carrying it, and there was "thus no evidence that [the defendant] continued with the enterprise after learning of the weapon." *Id*. at 449. Here, likewise, there was no evidence at trial that Prater saw any of his codefendants carrying, using, or possessing a firearm, so there is no evidence that he continued in the conspiracy with "advance knowledge" that he was furthering any of his codefendants' possession or use of a firearm.

"[B]ecause a defendant's prior knowledge is part of the intent required to aid and abet a § 924(c) offense, the burden to prove it resides with the Government." *Rosemond*, 572 U.S. at 81 n.10. The Government failed to do so here. Prater's conviction on Count Two should be reversed.

**III.** **The district court erred at sentencing by failing to apply a reduction for acceptance of responsibility and by applying an enhancement for obstruction of justice.**

In the event that one or more of Prater's convictions are reversed, this matter should be remanded to the district court for plenary resentencing. But even if his convictions are not reversed, the district court still erred at sentencing.

**A.** **Standard of review.**

This Court reviews de novo the district court's application of USSG § 3E1.1 to the undisputed facts. *See United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016). Similarly, "[w]hether conduct constitutes obstruction of justice under Guidelines § 3C1.1 is reviewed de novo, given that it is a mixed question of law and fact." *United States v. Iossifov*, 45 F.4th 899, 922 (6th Cir. 2022) (internal quotation marks omitted).

**B.** **A reduction should have been granted under USSG § 3E1.1 because Prater pleaded guilty in Case No. 152.**

For purposes of sentencing, Prater's convictions under Case No. 151 and Case No. 152 were combined. (PSR, RE 878, PageID.12846). In Prater's plea agreement related to Case No. 152, the Government agreed not to oppose a reduction at sentencing for acceptance of responsibility under USSG § 3E1.1. (Case No. 3:19-cr-152, Plea Agreement, RE 15, PageID.25). At sentencing, however, the Government opposed Prater's assertion that he was entitled to a reduction under § 3E1.1. (Transcript, RE 903, PageID.13302). Ultimately, both the PSR and the

district court declined to apply a downward adjustment for acceptance of responsibility under USSG § 3E1.1. (PSR, RE 878, PageID.12860; Transcript, RE 903, PageID.13303, 13318, 13338).

In part, the district court reasoned that Prater was ineligible for the § 3E1.1 reduction because he went to trial in Case No. 152. The district court reasoned that, because the two cases were grouped for purposes of sentencing, the § 3E1.1 reduction did not apply. (Transcript, RE 903, PageID.13303).

But Prater did accept responsibility for his involvement in the Vice Lords conspiracy; he pleaded guilty to it. Contrary to the district court's analysis, Prater was not ineligible for a reduction under § 3E1.1. Section 3E1.1 applies, as provided in the plea agreement.

To be sure, Prater went to trial in Case No. 151. But that was a different case than Case No. 152. Essentially, by superseding Prater in Case No. 151, the Government deprived Prater of the benefit that he earned by pleading guilty to the conspiracy in Case No. 152. Moreover, Prater went to trial in Case No. 152 rather than plead guilty so that he could preserve his Double Jeopardy argument. The trial court erred in concluding that his efforts to vindicate his constitutional rights could be held against him. *See* USSG § 3E1.1, cmt. n. 2.

**C.** **The district court erred in believing that a reduction under § 3E1.1 was barred by an obstruction enhancement under § 3C1.1.**

The district court also denied a § 3E1.1 reduction in part because it ruled that it was appropriate to apply an obstruction enhancement under § 3C1.1. (Transcript, RE 903, PageID.13303-13304). It is ordinarily the case that a defendant who receives a USSG § 3C1.1 enhancement for obstructing justice is not entitled to a § 3E1.1 reduction. *See* USSG § 3E1.1, cmt. n. 4. The district court ruled that, in view of the § 3C1.1 enhancement, it could not apply a § 3E1.1 reduction because there were no "extraordinary" circumstances justifying the reduction. (Transcript, RE 903, PageID.13304).

But a § 3C1.1 enhancement applies only where the defendant attempted to impede the prosecution of "the instant offense of conviction." USSG § 3C1.1. Prater's allegedly obstructive conduct pertained to a jailhouse interaction between him, codefendant Trevor Cox, and cooperating witness Seth Curtis, in which Cox used a shank to try to convince Curtis to recant his guilty plea. (Transcript, RE 903, PageID.13300-13301). At trial, Curtis testified only to that jailhouse incident, as well as to the fact that Prater was a Vice Lord; he did not implicate Prater in the sale of any particular drugs or the possession of any particular firearms. (Transcript, RE 537-1, PageID.7199, 7214-7215). In fact, Curtis testified that the only time that he had seen Prater (other than when he was in jail) was in 2014—almost half of a decade

before the conspiracy was alleged to have begun. (Transcript, RE 537-1, PageID.7244).

In other words, the "instant offense of conviction" upon which the § 3C1.1 enhancement was predicated could have only been Count One in Case No. 151. Regardless of whether a § 3C1.1 enhancement was appropriate in Case No. 151, it did not bar the district court from applying a § 3E1.1 reduction in Case No. 152. The district court's belief that it could apply a § 3E1.1 reduction only if there was an "extraordinary" circumstance was mistaken, as a matter of law. Because the district court erred as a matter of law, Prater's sentence should be vacated. (Moreover, of course, to the extent that Count One is barred by double jeopardy, § 3C1.1 does not apply. If Prater's conviction on Count One is reversed, a § 3E1.1 reduction is warranted and a § 3C1.1 enhancement is not available.)

## CONCLUSION

The judgment of the district court should be reversed.

Respectfully submitted,

Dated: June 15, 2023
           */s/ Stephen J. van Stempvoort*
           Stephen J. van Stempvoort
           Miller Johnson
           45 Ottawa Avenue SW, Suite 1100
           Grand Rapids, MI 49503
           (616) 831-1700
           vanstempvoorts@millerjohnson.com
           *Counsel for Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 12,020 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2010 for Windows in 14-point Times New Roman font.

*/s/ Stephen J. van Stempvoort*
Stephen J. van Stempvoort
Miller Johnson
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1700
vanstempvoorts@millerjohnson.com
*Counsel for Appellant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, the foregoing document was served on all counsel of record through the CM/ECF system.

*/s/ Stephen J. van Stempvoort*
Stephen J. van Stempvoort
Miller Johnson
45 Ottawa Avenue SW, Suite 1100
Grand Rapids, MI  49503
(616) 831-1765
vanstempvoorts@millerjohnson.com
*Counsel for Appellant*

# Addendum

## Appellant Prater's Designation of Relevant District Court Documents

| Case No. 3:19-cr-00151 District Court for the Eastern District of Tennessee | | | |
|---|---|---|---|
| District Court Record Entry No. | Date | Description | PageID Range |
| 3 | 9/4/19 | Indictment | 4-12 |
| 78 | 3/3/20 | Superseding Indictment | 149 |
| 194 | 9/18/20 | Prater's Motion to Dismiss Indictment | 1582-1595 |
| 231 | 10/2/20 | Government's Response in Opposition to Motion to Dismiss | 1693-1924 |
| 243 | 10/8/20 | Second Superseding Indictment | 1943-1974 |
| 322 | 12/21/20 | Report & Recommendation to Deny Motion to Dismiss | 2605-2620 |
| 332 | 1/22/21 | Opinion and Order Denying Motion to Dismiss | 2663-2667 |
| 402 | 5/28/21 | Government's Trial Brief | 3247-3267 |
| 454 | 6/24/21 | Order | 3671-3680 |
| 519 | 7/23/21 | Jury Verdict | 4911-4934 |
| 531 | 8/20/21 | Prater's Rule 29 Motion | 6959-6961 |
| 534 | 9/3/21 | Government's Response to Rule 29 Motions | 6976-6996 |
| 537 | 9/17/21 | Trial Transcript – Vol. V | 7032-7343 |
| 537-1 | 9/17/21 | Trial Transcript – Vol. VI | 7344-7568 |
| 537-2 | 9/17/21 | Trial Transcript – Vol. VII | 7569-7878 |
| 541 | 9/28/21 | Trial Transcript – Vol. II | 8109-8337 |
| 541-1 | 9/28/21 | Trial Transcript – Vol. III | 8338-8560 |
| 541-3 | 9/28/21 | Trial Transcript – Vol. VIII | 8757-8813 |
| 541-4 | 9/28/21 | Trial Transcript – Vol. IX | 8814-9003 |
| 554 | 9/30/21 | Trial Transcript – Vol. X | 9087-9233 |
| 869 | 6/21/22 | Order Denying Rule 29 Motion | 12784-12800 |
| 878 | 6/27/22 | Presentence Report | 12842-12871 |

| Case No. 3:19-cr-00151 District Court for the Eastern District of Tennessee | | | |
|---|---|---|---|
| District Court Record Entry No. | Date | Description | PageID Range |
| 887 | 7/12/22 | Transcript of Hearing on Motion to Dismiss Indictment | 12923-12958 |
| 890 | 7/12/22 | Criminal Judgment | 12977-12984 |
| 892 | 7/13/22 | Notice of Appeal | 12989-12990 |
| 903 | 8/30/22 | Transcript of Sentencing Hearing | 13281-13348 |

| Case No. 3:19-cr-00152 District Court for the Eastern District of Tennessee | | | |
|---|---|---|---|
| District Court Record Entry No. | Date | Description | PageID Range |
| 1 | 9/14/19 | Indictment | 1-3 |
| 15 | 10/16/19 | Plea Agreement | 22-29 |

MJ_DMS 36073652v1 49131-162